

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed October 20, 2022

_____
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 7 |
| MARCUS JARROD PAYNE | § § | |
| | § | Case No. 21-31735-SGJ-7 |
| Debtor. | § § § § | |
| STACY PAYNE, | § § § | |
| Plaintiff, | § | Adversary No. 22-03030-sgj |
| v. | § § | Adversary No. 22-03058-sgj |
| MARCUS JARROD PAYNE, | § § § | Consolidated Adversary Cases |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER REGARDING COMPETING MOTIONS FOR SUMMARY JUDGMENT: DECLARING SOME, BUT NOT ALL, OF DEBTOR'S DEBTS NONDISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(15)**

This is a nondischargeability action between a chapter 7 debtor and his former spouse. Before the Court are competing motions for summary judgment of the Plaintiff Stacy Payne (the former spouse), and Defendant Marcus Jarrod Payne, the chapter 7 debtor. The present issue is whether *six* state court judgments/orders obtained by Plaintiff, awarding her attorney's fees, costs, and sanctions in certain *post-divorce* proceedings--should be excepted from the Defendant Debtor's discharge under 11 U.S.C. § 523(a)(5) or, alternatively, 11 U.S.C. § 523(a)(15). Having considered the summary evidence (all of which was documentary, and none of which was disputed), the Court hereby grants Plaintiff's motion for summary judgment in part and denies it in part—specifically determining that *four of the six debts* are nondischargeable under Bankruptcy Code section 523(a)(15), but *none* of the debts are nondischargeable under section 523(a)(5). Likewise, the Court grants Defendant's motion for summary judgment in part and denies it in part—specifically determining that *two of the six* debts are *not* nondischargeable under Bankruptcy Code section 523(a)(15) and *none* of the six debts are nondischargeable under section 523(a)(5).

I.   **Undisputed Facts**

Plaintiff Stacy Payne ("Plaintiff" or sometimes "SP") and Defendant Marcus Jarrod Payne ("Defendant" or sometimes "MJP") are former spouses who each sought a divorce from one another in May 2019 in the 303rd Judicial District Court in Dallas County, Texas ("Family Court"). After mediation, they entered into an Agreed Final Decree of Divorce that was signed by the Family Court on December 2, 2019 (the "Divorce Decree") [*See* Dkt. No. 92 at Ex. A].[1] The Divorce Decree dissolved their marriage; ordered a division of property and debts; and contained

---

[1] All Dkt. No. references are to the docket maintained by the Bankruptcy Clerk in Adversary Proceeding No. 22-3030, unless otherwise indicated.

1

a "release," releasing each other "from every claim, demand, right and obligation whatsoever, both in law and in equity, that either of them ever had or now has against the other or their property upon the reason of any matter, cause (including but not limited to Cause No. JS 19 00127G), including tort claims of any kind, or thing up to entry of this Agreed Final Divorce Decree . . . . (the "Release")" *Id.* at p. 22. Both parties signed it. There were no children of the marriage.

### A. The Post-Divorce Defamation Suit

In March of 2020 (just three months after the Divorce Decree), MJP sued SP for defamation and related torts ("Defamation Suit"), based on statements allegedly made by SP in connection with a **pre-divorce** domestic dispute and 911-call and other statements/actions thereafter—all of which occurred **before** the entry of the Divorce Decree. The Defamation Suit was filed in the 134th Judicial District Court of Dallas County, Texas. SP answered and moved to dismiss based on the Release in the Divorce Decree. The Defamation Suit was subsequently transferred to the Family Court. Defendant appealed the transfer order (an interlocutory order), and the Texas Court of Appeals for the Fifth Appellate District at Dallas dismissed the appeal for want of jurisdiction and ordered that SP recover her costs from MJP relating to that appeal [Dkt. No. 92 at Ex. B]. The Family Court later granted SP's motion to dismiss the Defamation Suit and awarded her $20,000 in attorney's fees and expenses [Dkt. No. 92 at Ex. D]. Defendant then appealed this dismissal, and the Texas Court of Appeals for Sixth Appellate District at Texarkana affirmed the Family Court's ruling [Dkt. No. 92 at Ex. C].[2] *See also* Payne v. Payne, No. 06-20-00051-CV (Ct. App—Texarkana Apr. 1, 2021).[3] The Court of Appeals Memorandum Opinion makes it very clear that

---

[2] Note that the appeal from the Family Court was transferred to the Texarkana Appellate Court from the Dallas Appellate Court by the Texas Supreme Court, pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE § 73.001

[3] The court takes judicial notice of this opinion (which thoroughly explains the details relevant to the Defamation Suit and the reasons for its dismissal) that is available in the public record but was not part of the summary judgment

2

the reason for the dismissal of the Defamation Suit and attorney's fee award was the **Release** in the Divorce Decree—i.e., any of the claims asserted in the Defamation Suit had been released.[4]

### B. The Post-Divorce QDRO Suit

The Family Court also oversaw a post-divorce enforcement action centering around the qualified domestic relation order (QDRO) completion and approval process. Specifically, the Divorce Decree had awarded MJP a portion of certain of SP's retirement benefits and stated that the details would be defined in a subsequent QDRO that would be signed by the Family Court after the Divorce Decree. The Family Court went on to state that "Husband [MJP] shall pay 100% for cost of QDRO drafting and submission and any all [sic] applicable Federal Income Taxes and State Taxes associate with the husband's receipt of these funds." [Dkt. No. 92 at Ex. A, p. 4.] Thus, MJP was required to prepare, submit, and pay the cost of obtaining the post-divorce QDROs. MJP failed to do so properly, and SP hired a professional who was an expert in the field of QDRO preparation to review and prepare acceptable division orders that were suitable for submission to the retirement plan administrators. When SP thereafter moved for entry of a judgment from the Family Court on these issues, MJP filed repeated objections, afterwards initiating an action against SP in relation to the QDROs. After finding MJP's actions groundless and for the purpose of harassment, the Family Court awarded several judgments in SP's favor, for both sanctions and attorney's fees [Dkt. No. 92 at Ex. E-H].

---

evidence. *See* Fed. R. Ev. 201(a)-(d) (courts may take judicial notice at any stage of a proceeding of items that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned—including items available in the public record).

[4] *Id.*

3

    C.    *The Bankruptcy Filing*

On September 28, 2021, Defendant commenced a voluntary petition for relief pursuant to Chapter 7 of Title 11 of the United States Code in the Bankruptcy Court for the Northern District of Texas [*See* Case No. 21-31735]. Thereafter, Plaintiff filed her complaint pursuant to 11 U.S.C § 523(a)(5) and (a)(15), objecting to the dischargeability of the debts stemming from a total of six judgments or orders rendered against Defendant in connection with each the post-divorce Defamation Suit and the post-divorce QDRO Suit:

1. With respect to the Defamation Suit, a "Mandate" (entered on May 11, 2020) from the Texas Court of Appeals for the Fifth Appellate District, issued after its dismissal of MJP's unsuccessful appeal of the transfer of the Defamation Suit to the Family Court, awarding SP's cost of appeal [Dkt. No. 92 at Ex. B].

2. With respect to the Defamation Suit, an "Order on Respondent's Motion to Dismiss Baseless Causes of Action" (entered July 2, 2020), dismissing the Defamation Suit and assessing $20,000.00 in attorney's fees and expenses against MJP and in favor of SP [Dkt. No. 92 at Ex. D].

3. With respect to the QDRO Suit, a "Judgment" (entered May 7, 2021) awarding SP $13,456.00 in attorney's fees and expenses, plus 5% accruing interest, related to the preparation of the QDROs. [Dkt. No. 92 at Ex. E].

4. With respect to the QDRO Suit, an additional "Order Awarding Attorney Fees and Expenses" (entered May 7, 2021) for $4,853.36 in attorney's fees, plus 5% accruing interest, after the Family Court found Defendant's objections to entry of judgment in the QDRO Suit to be "groundless and brought in bad faith or for purpose of harassment." [Dkt. No. 92 at Ex. F].

5. With respect to the QDRO Suit, yet another "Order Awarding Attorney Fees and Expenses" (entered May 7, 2021) for another $1,100.00 attorney's fees, plus 5% accruing interest, in connection with Plaintiff's amended motion for a final written judgment [Dkt. No. 92 at Ex. G].

6. With respect to the QDRO Suit, yet another "Judgment" (entered May 14, 2021) for $5,000.00 in sanctions, after the court found Defendant's actions in the QDRO Suit groundless and for the purpose of harassment [Dkt. No. 92 at Ex. H].

Defendant promptly filed a motion to dismiss this nondischargeablity adversary proceeding under Federal Rule of Civil Procedure 12(b). This Court denied the motion, stating that Plaintiff had established a plausible claim.

Defendant then filed a motion for summary judgment, arguing that none of the debts owed to Plaintiff fall under the purview of either 11 U.S.C § 523(a)(5) or (a)(15). Plaintiff countered with her own motion for summary judgment, stating that Defendant cannot receive a discharge of any of the six debts created by the court judgments/orders set forth above, which she claims are all debts arising from "a domestic support obligation" (§ 523(a)(5)) or, in the alternative, were "incurred by the debtor…in connection with . . . a divorce decree" (§ 523(a)(15)).

## II.  Standard for Summary Judgment

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56, as made applicable by FED. R. BANKR. P. 7056. In concluding whether a question of fact has been raised, the evidence must be viewed in the light most favorable to the non-moving party. *Berquist v. Washington Mut. Bank,* 500 F.3d 344, 349 (5th Cir. 2007). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pylant v. Hartford Life and Acc. Ins. Co.,* 497 F.3d 536, 538 (5th Cir. 2007).

A court's role at the summary judgment stage is not to weigh the evidence or decide the truth of the matter at hand, but rather to determine solely whether a genuine issue of material fact exists. *Peel & Co., Inc. v. The Rug Market,* 238 F.3d 391, 394 (5th Cir. 2001).[5] After the movant

---

[5] "The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence" (citing *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 135, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)); *see also U.S. v. An Article of Food Consisting of 345/50 Pounds Bags*, 622 F.2d 768, 773 (5th Cir. 1980) (the court "should not proceed to assess the probative value of any of the evidence....").

5

has presented a properly supported motion for summary judgment, the burden then shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue of material fact does exist. *Hamilton v. Segue Software Inc.,* 232 F.3d 473, 477 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and any other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

When, as in the present case, opposing parties both submit motions for summary judgment, "each motion must be considered on its own merits." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441, 499 (Feb. 1992).[6] When analyzing such cross-motions for summary judgment, the court reviews each party's motion independently, viewing the relevant evidence and inferences in the light most favorable to the respective non-moving party. *Bell v. Itawamba Cnty. Sch. Bd.*, 774 F.3d 280, 290 (5th Cir. 2014).

### III.    Legal Analysis and Discussion

Bankruptcy subject matter jurisdiction exists in this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a statutory core proceeding, pursuant to 28 U.S.C. §157(b)(2)(I); thus, the Court has statutory authority to enter a final order. Moreover, the Court has determined that it has Constitutional authority to enter a final order in this matter.

The key question in this case concerns the applicability of 11 U.S.C. § 523(a)(5) and 11 U.S.C. § 523(a)(15) to the debts owed by the Defendant to the Plaintiff.

---

[6] *See also* 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2720, at 335-36 (3d ed. 1998) (stating: "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.")

Pursuant to 11 U.S.C. § 523,

>(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt –
>
>>(5) for a domestic support obligation
>>
>>...
>>
>>or;
>>
>>...
>>
>>(15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

This Court has previously noted that these two provisions together demonstrate "Congress' balance[ing] two public policies ... the Bankruptcy Code's purpose of providing a fresh start to a deserving debtor; and the importance of the debtor's obligation to his family. *In re Brooks,* 371 B.R. 761, 766 (Bankr. N.D. Tex. 2007) (citing *Marrama v. Citizens Bank*, 549 U.S. 365, 127 S. Ct. 1105, 1109, 166 L. Ed. 2d 956 L.E.d.2d 956 (2007)). Both section 523(a)(5) and (a)(15) attempt to ensure that a non-debtor spouse will not be "left out of pocket because of a debtor's bankruptcy filing." *Id*. at 767.

Plaintiff argues in her motion that all six judgments/orders rendered by the state court should be excepted from discharge under both these two provisions. In contrast, Defendant moves for summary judgment arguing that none of the six falls under either subsection.

Accordingly, the Court now turns to § 523(a)(5) and (a)(15) respectively.

A. *Non-dischargeability of a Debt Under § 523(a)(5)*

First, this Court must consider whether Defendant's obligations for Plaintiff's attorney's fees and costs are nondischargeable under 11 U.S.C. § 523(a)(5). Under this provision, a debt will

7

not be discharged if it constitutes a "domestic support obligation." The term "domestic support obligation" is defined in section 101(14A) of the Bankruptcy Code as a debt owed to a debtor's child, spouse, or former spouse in the nature of alimony, maintenance, or support arising out of a court order by reason of a separation agreement or divorce decree.

Plaintiff contends that all judgments/orders rendered by the state court are debts arising from a domestic support obligation, given their connection to the divorce proceeding, and thus should not be discharged under this subsection. Defendant counters that none of the judgments are in any way related to a support obligation; he notes the fact that neither the Divorce Decree nor any other court ruling or judgment granted Plaintiff alimony, child support, or any other domestic or matrimonial financial aid.

Plaintiff's argument misstates the function of § 523(a)(5). Based on the plain language of the statute, for a debt to be nondischargeable under this provision, its purpose must be the provision of *support* to the party it is owed.

Based on the nondisputed facts put forth by both parties, it seems clear that the state courts did not intend any of the debts created by the six judgments/orders to be in the nature of support. As set forth above, two of the awards were intended to reimburse Plaintiff for her attorney's fees and costs associated with defending Defendant's dismissed Defamation Suit against Plaintiff. The other four judgments/orders from the QDRO Suit created debts intended to reimburse SP for the QDRO-preparation attorney's fees and expenses (which the Divorce Decree contemplated that ***MJP*** would bear), as well as fee shifting and sanctions awarded to SP to compensate her for groundless or bad faith conduct on the part of Defendant (again, in connection with the QDRO process, that had been contemplated by the Divorce Decree). Plaintiff has failed to put forward

8

evidence or a credible argument that any of the six debts were in the nature of alimony, maintenance, or support for her.

Therefore, this Court concludes that the undisputed evidence establishes as a matter of law that none of the debts fall under the § 523(a)(5) exception to discharge, as they are not "domestic support obligations" within the meaning of the statute.

### B. Non-dischargeability of a Debt Under § 523(a)(15)

The Court now considers whether the debts created by the six state court judgments/orders fall under the purview of § 523(a)(15).

Section 523(a)(15) was added into the Bankruptcy Code by the Bankruptcy Reform Act of 1994, and then amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).[7] The net result was to "expand the universe of divorce related debts excepted from discharge." *In re Morris*, 454 B.R. 660 (Bankr. N.D. Tex. 2011).[8] While 11 U.S.C. Section 523(a)(5) only prevents "domestic support obligation[s]" from being discharged in bankruptcy, Section 523(a)(15) covers *all* other debts owed to a former spouse, provided they are incurred "in the course of" or "in connection with" a divorce.

There are three requisite elements to a non-dischargeable debt under subsection (a)(15): (1) the debt in question is owed to a spouse, former spouse, or child of the debtor; (2) the debt is not a support obligation of the type described in subsection (a)(5); and (3) the obligation was

---

[7] 4 COLLIER ON BANKRUPTCY ¶ 523.23 (16th Ed.).

[8] *See also In re Taylor*, 478 B.R. 419, 427 (10th Cir. BAP 2012), *aff'd*, 737 F.3d 670 (10th Cir. 2013) ("exceptions to discharge under § 523(a)(15) are construed more liberally than other provisions of § 523."); *but see Bullock v. Bank Champaign*, 569 U.S. 267 (2013) (explaining that "exceptions to discharge 'should be confined to those plainly expressed,'" and that Congress normally confines such exceptions to circumstances where "special policy considerations, such as the presence of fault, argue for preserving the debt").

9

incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court of record.

According to undisputed evidence in the record, all six debts in question here easily satisfy the first two requirements of § 523(a)(15). First, all six debts are either owed to the former spouse, Plaintiff, directly (i.e., the $5,000.00 judgment for sanctions), or indirectly, as an award for her attorney's fees and expenses. Such attorney's fees awards are intended to reimburse a party for the party's own debt owing to her attorney; this Court has held that the latter is covered by § 523(a)(15). *See In re Morris* at 663. Secondly, as discussed above, none of the debts created by the six judgments/orders are a support obligation of the type described in § 523(a)(5); consequently, the second requirement has been fulfilled as well.

This leaves us with the last requirement for a debt to be held non-dischargeable under § 523(a)(15): it must have arisen "in the course of" a divorce or separation *or* "in connection with" a separation agreement, divorce decree, or other order of a court of record.

Courts have differed in how broadly they have interpreted this subsection's last requirement. Several jurisdictions have expanded their understanding of what satisfies the elements of § 523(a)(15) to include: (1) equalization payments originally owed to a former spouse but now due to a third party;[9] (2) attorney's fees awarded from a post-divorce custody proceeding;[10] (3) debts ordered by a divorce decree to be paid to the former spouse;[11] (4) attorney's fees awarded for not making payments towards a sanction imposed for a failure to remove a *lis*

---

[9] *See in re Esparsen*, 545 B.R. 330 (Bankr. D.N.M. 2016) (explaining that a charging lien on the outstanding equalization payment filed by the former spouse's attorney did not keep the debt from being nondischargeable under subsection (a)(15)).

[10] *In re Gruber*, 436 B.R. 39 (Bankr. N.D. Ohio 2010) (finding that a former spouse's award for attorney's fees from defending a motion to modify child support filed a year after the divorce was finalized nondischargeable).

[11] *In re Santry*, 481 B.R. 824 (Bankr. N.D. Ga. 2012) (debtor was ordered under the divorce decree to pay spouse for building credit card debt in her name during their marriage which was nondischargeable).

*pendens* on a property as ordered in the divorce decree;[12] and (5) attorney's fees and costs incurred to defend a suit predicated on alleged negative or untrue statements made about former spouse's parental fitness.[13]

However, other courts have not applied the exception so broadly. The Bankruptcy Court for the Northern District of Georgia relied on a textual analysis of the section—and the usage of the terms "incurred" and "in the course," rather than more broad terms such as "addressed"—to conclude that an obligation under a divorce decree to pay 50% of an SBA loan was not excepted from discharge under subsection (a)(15). *In re Proyect*, 503 B.R. 765, 775 (Bankr. N.D. Ga. 2013). In a later case, the same court did not find subsection (a)(15) applicable to attorney's fees arising out of a defamation suit with common underlying facts to the divorce proceedings even if they were "intertwined" with it. *In re Wilbur*, 574 B.R. 782 (Bankr. N.D. Ga. 2017).

The question for this Court is whether each debt meets this element as a matter of law—since, according to both Plaintiff's and Defendant's motions for summary judgment, there are no relevant questions of material fact regarding the actual judgments/orders themselves, or whether the courts of record did render each one. Therefore, we now look only to each judgment/order to see if the debt created falls within the bounds of subsection (a)(15)'s third condition.

---

[12] *In re Kearney*, 433 B.R. 640 (Bankr. S.D. Tex. 2010) (J. Bohm).

[13] *In re Bohrer*, 628 B.R. 676 (Bankr. S.D. Cal. 2021) (explaining that a former spouse's award for attorney's fees from defending a defamation suit that was (1) brought during the ten-year period the parties were in custody proceeding, and modifications, and (2) based on actions within those proceedings, was nondischargeable under §§ (a)(15)).

> i.  *The Two Judgments/Orders in the Post-Divorce Defamation Suit: the "Mandate" Awarding Plaintiff Costs Associated with Appeal, and the $20,000 Attorney's Fees Award of the Family Court*

The first debts to examine are the two created in connection with the Defamation Suit—i.e., (a) the debt created in the Mandate of the Texas Court of Appeals for the Fifth Appellate District at Dallas, when it dismissed Defendant's appeal of the transfer of his Defamation Suit to the Family Court, and (b) the subsequent award of $20,000 in attorney's fees by the Family Court to Plaintiff after its ultimate dismissal of the Defamation Suit.

Here, the Defamation Suit was filed by Defendant against Plaintiff *after* the parties had already divorced—so these debts created in the Defamation Suit technically were not incurred *in the course of* a divorce or separation. However, the Defamation Suit was later dismissed due to the Release of claims included in the Divorce Decree. Does this make the debts incurred *in connection with* a divorce decree?

When presented with a similar case, the Bankruptcy Court for the Southern District of California concluded that an award of attorney's fees for a defamation claim were sufficiently related to the divorce proceedings to except them from discharge. However, unlike the present case, the alleged defamation in question stemmed from the debtor's statements made *in family court regarding the former spouse's fitness as a parent. In re Bohrer*, 628 B.R. 676 (Bankr. S.D. Cal. 2021). In contrast, the Bankruptcy Court for the Northern District of Georgia found that a mere similar basis of facts between a defamation suit and a divorce did not make the defamation suit related enough to the divorce proceedings for the judgment to be excepted from discharge under subsection (a)(15). *In re Wilbur*, 574 B.R. 782 (Bankr. N.D. Ga. 2017) (the plaintiff contacted their former spouse's employer, stating that said ex-spouse was using drugs, as well as creating a false profile for their ex-spouse on a sex site; the court stated that although the

12

subsequent defamation litigation was intertwined with divorce-related proceedings, it did not arise in connection with the divorce).

Here, the alleged defamatory statements were neither made in relation to a child custody battle nor during the divorce proceeding in Family Court. Indeed, they were allegedly made by Plaintiff SP shortly *before* the divorce was filed in connection with a domestic dispute and a 911-call (and perhaps involved additional statements to law enforcement personnel shortly thereafter).

Plaintiff argues that because the filing of the Defamation Suit (three months after the Divorce Decree) was a violation of ***the Divorce Decree's mutual Release***, the Family Court's and appellate court's award of attorney's fees and costs to her in connection with the Defamation Suit is sufficiently connected to the divorce proceeding as to be nondischargeable. However, the mere fact that the Defamation Suit violated the Divorce Decree's release language does not seem sufficient to render it "incurred in the course of…or in connection with a separation agreement, divorce decree or other order of a court of record." As previously stated, the lawsuit arose *after* the close of the divorce and did not involve a child custody dispute, alimony award, or any other such divorce-related issues.  To hold these judgments non-dischargeable simply because the Defamation Suit itself happened to be a violation of the Release in the Divorce Decree seems to exceed the statutory wording of subsection (a)(15). The Defamation Suit does not seem is closely-enough related to the divorce as to be nondischargeable.

As such, this Court concludes that Plaintiff has failed to establish as a matter of law that these judgments fall within the subsection (a)(15) exception to discharge. Defendant is entitled to summary judgment that these debts related to the Defamation Suit are dischargeable.

13

    *ii.*    *Remaining Debts Created During the Post-Divorce QDRO Suits (Claims 3-6)*

The remaining four debts arise in connection with a post-divorce enforcement action in the Family Court to obtain QDRO completion and approval. Like the above claims, the relevant question here is whether these obligations were incurred ***in connection with*** a separation agreement, ***divorce decree***, or other order of a court of record, to satisfy the third element of subsection (a)(15).

Here, the QDRO Suit stemmed from the division of interests in three of the Plaintiff's retirement accounts that were negotiated and ordered in the Divorce Decree. Defendant was being awarded a portion of certain of Plaintiff's retirement assets. But Defendant was required to prepare and submit QDROs to effectuate same—QDROs that the retirement plan administrators would find acceptable so that the assets could be properly divided. However, Defendant failed to properly do so. Plaintiff prepared them instead, and she was subsequently awarded her related costs and expenses. Neither party disputes that the Divorce Decree required the preparation of these QDROs, that Plaintiff hired a professional to do so, and that the Family Court awarded her related expenses for their preparation. Nor do the parties dispute that the Family Court later rendered judgments in Plaintiff's favor for attorney's fees and sanctions after it found Defendant's actions in the same proceeding groundless and constituting harassment.

The four debts created by the four judgments/orders in the QDRO Suit all stem from an action required by the parties' Divorce Decree. The Divorce Decree's division of property and language contemplating the subsequent drafting and submission of the QDROs directly led to this post-divorce QDRO Suit. Therefore, the costs, expenses, and sanctions from this enforcement action clearly were "incurred…in connection with…a divorce decree," as contemplated by subsection (a)(15).

14

As such, this Court can conclude as a matter of law that the four debts stemming from the judgments/orders issued in the QDRO Suit are non-dischargeable under § 523(a)(15).

### IV.    Conclusion

For the reasons set forth above, summary judgment is granted to the Defendant, Marcus Jarrod Payne, in part, as follows:

Plaintiff Stacy Payne's debts arising from the Defamation Suit and the QDRO Suit are ***not*** excepted from discharge pursuant to 11 U.S.C. § 523(a)(5).

Plaintiff Stacy Payne's two debts arising from the Defamation Suit are also ***not*** excepted from discharge pursuant to 11 U.S.C. § 523(a)(15).

For the reasons set forth above, summary judgment is granted to the Plaintiff Stacy Payne, in part, as follows:

Plaintiff Stacy Payne's four debts arising from the QDRO Suit ***are*** excepted from discharge pursuant to 11 U.S.C. § 523(a)(15). Specifically, the following debts are excepted from Marcus Jarrod Payne's bankruptcy discharge: (a) the "Judgment" in the QDRO Suit (entered May 7, 2021) awarding Stacy Payne ***$13,456.00 in attorney's fees and expenses, plus 5% accruing interest,*** related to the preparation of the QDROs [Dkt. No. 92 at Ex. E]; (b) the "Order Awarding Attorney Fees and Expenses" (entered May 7, 2021) in the QDRO Suit for ***$4,853.36 in attorney's fees, plus 5% accruing interest*** [Dkt. No. 92 at Ex. F]; (c) the "Order Awarding Attorney Fees and Expenses" (entered May 7, 2021) in the QDRO Suit for another ***$1,100.00 in attorney's fees, plush 5% accruing interest*** [Dkt. No. 92 at Ex. G]; and (d) the "Judgment" (entered May 14, 2021) in the QDRO Suit for ***$5,000.00 in sanctions*** [Dkt. No. 92 at Ex. H].

The Bankruptcy Code does not allow for attorney's fee shifting in the context of a section 523 action, except in circumstances not applicable here,[14] so Plaintiff and Defendant shall each bear their own attorney's fees, expenses, and costs with regard to the section 523 determinations herein.[15]

Plaintiff Stacy Payne should submit a written Judgment consistent with this Opinion.

**IT IS SO ORDERED.**

### END OF MEMORANDUM OPINION AND ORDER ###

---

[14] *See* 11 U.S.C. § 523(d) (permitting reimbursement of a debtor's costs and reasonable attorney's fees when a creditor unsuccessfully brings a nondischargeability action on a consumer debt, if the action was not "substantially justified," unless "special circumstances would make the award unjust").

[15] While the Court acknowledges it may be proper to award attorney's fees to a creditor when the creditor's claim is actually being liquidated as part of a section 523 nondischargeability action, and there is a contract between the parties that provides that a prevailing litigant in any dispute will receive attorney's fees, or when there is a nonbankruptcy statute that shifts attorney's fees, that is not the situation in the present case. *See, e.g.*, *Cohen v. de la Cruz*, 523 U.S. 213, 221, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998).